Mrs. Mosby, First Premier Bank. May I proceed, Your Honor? Please. Madam Chief Judge, may it please the Court. Good morning. Darren Kaplan on behalf of Plaintiff Appellant Deborah Moss. We're here today because after finding that Plaintiff, a victim of a RICO unlawful debt collection conspiracy, had satisfied her burden on a host of issues on summary judgment, the District Court decided sua sponte that Plaintiff could not show knowing engagement in the RICO scheme by the appellee, First Premier Bank, because Scott Tucker, the head of the RICO conspiracy, had falsely claimed that his entities were owned by Native American tribes, and, as the District Court said, had that been the case, their lending activities would not have been subject to State usury laws. Now, defendant never even raised this argument in its moving papers. We certainly didn't fully brief it. And further, the finding was incorrect as a matter of fact. The Tucker lenders never explicitly represented to anyone at First Premier Bank that they were owned by Native American tribes, and certainly not to any senior executive. And First Premier has never even claimed that it relied on that knowledge in deciding to become the ODFI for the Tucker payday lenders. And even if they had, as a matter of law, tribal sovereign immunity would not have made the debts lawful. It would only have made them immune to enforcement by the States. We cite a long litany of cases for that proposition, including the seminal case in the Supreme Court, Kiowa Tribe of Oklahoma, which holds there is a difference between the right to demand compliance with State laws and the means available to enforce them. Can I ask you to jump forward to one of the other bases for the District Court's decision, which was that there was no showing that the bank had agreed with any of the co-conspirators. And it's my understanding that you're making an argument that you need not allege that the bank had a meeting of minds with another co-conspirator? No, Your Honor. So who was the co-conspirator and with whom did they agree? With whom did they both agree we are going to commit this conspiracy together? Answer that question and then explain. Yes, Your Honor. So the members of the conspiracy are the Tucker Payday Lender Entity, DBAs, doing business ads, right? Those are the members of the conspiracy? Those are the members of the conspiracy. Okay, and you're alleging that the bank is also a member of that San Francisco conspiracy? That's right, Your Honor. And you're saying that they agreed with the Tucker Lenders? They agreed to perform the ads. No, no, no, no, no. Stick with my question. It's a yes or no answer. Did they, in your view, agree with the Tucker Lenders to enter into this conspiracy, yes or no? Yes. They did? Okay, when did they do that and how did they do that? They did that when they entered into the NCRFs. That is, the new client request forms were presented to them specifically on behalf of these Tucker Payday Lender Entities. The new client request forms were very specific about what was being asked of them, what was being asked of First Premier to do at this point. So you're saying on behalf of, but they were presented by the TPX, right? Which was the intercept, am I getting that right? That's correct, Your Honor. It was presented by intercept. So they definitely agreed with the intercept, but the intercept is not alleged to be a co-conspirator, right? They're not alleged to be a co-conspirator, that's correct. However— Okay, so they're not a co-conspirator in this view because we're looking at only who's alleged to be a co-conspirator, right? So you're saying that because they agreed with the intercept, they also somehow necessarily agreed with the other co-conspirators? Tell me how that works, or is that not your theory? Am I not understanding it properly? Your Honor, the theory is as follows. The Tucker Payday Lenders needed some bank to serve, or some financial institution to serve as an ODFI. They asked intercept, go and find us an ODFI, and First Premier Bank agreed to perform that function. The course of serving as an ODFI, First Premier agreed that it was going to debit borrowers' accounts in repayment of unlawful usurious loans. That is at the very least— You're talking about what they agreed to do, not with whom they agreed. And a conspiracy requires that you agree with another co-conspirator. Now, if you agree to do something that helps a conspirator, you could, I suppose, be charged with aiding and abetting a conspiracy, right? So if someone's going to rob a bank, you know three guys are going to go off and rob a bank. They've sat together, they've planned the bank robbery, they've gone out, and then over here, either through an intermediary or some other way, you've learned that they're going to rob the bank, and you go and you help them. That person is not a co-conspirator, right? That person is aiding and abetting the co-conspirators, right? It's different, because in my hypothetical, they have not reached an agreement with those three people. They could be criminally liable as aiding and abetting betters, maybe, if there's such a thing as aiding and abetting in court crime. I don't know. But that doesn't make them a co-conspirator, right? They have to have an agreement with at least one of the three, right? So what if the— No, no. Let's go step by step. Do you agree with that preposition or not? So the only way that I can answer it is to say that what is happening here is— No, no. Where's some of my hypothetical? I want to work off the hypothetical, determine whether, in your view, the hypothetical is accurately stating the law. And then if it is or it isn't, extrapolate from that. That's how my thought process works here. Help me with that. Thank you, Your Honor. Tell me now whether I've accurately stated the law, in your view, or whether I've not. I believe you stated the law accurately. However— Okay. However— Are you saying that that analogy does not map onto this factual scenario? Yes. That's why. So in this scenario, the bank is the person out here who has not met with or talked to or agreed with the three people who have gotten together to rob the hypothetical bank. How is it that, in this case— Well, it is a bank. A bad analogy, I suppose. The bank, in your case, now is deemed to have agreed with these other people that he talked to. Because the three people told the intermediary, go and find me somebody that agrees to do this. That's what happened here. But doesn't that just amount to saying that performing its role as an ODFI is enough to establish an agreement? And could a reasonable jury really find a conspiratorial agreement simply on the basis of the bank performing that function? I would argue— Or am I missing facts in the record? Well, there's facts in the records which say that not only is there the agreement, there is the knowing agreement, right? So if the bank agreed simply to passively perform a regular banking function, I would say that that's not enough for a RICO conspiracy because it doesn't meet the knowing engagement element, which I think is the—that's, I think, the filter here. If First Premier had agreed to do this without knowing all the other things that it knew at the time and then subsequently knew while it remained in the agreement, that, I think, would be why there would not be a RICO conspiracy here. I've never sort of thought that the agreement issue was the key element here because it is. I mean, a conspiracy is an agreement. Of course. That is the definition of a conspiracy. And the two parties, at least two parties, must agree with each other. You seem to keep talking about it as Party A has agreed to do something, therefore they're a co-conspirator. That's not how it works. A and B must agree on something. They must have a meeting of the minds. You keep talking about A agreed, A agreed, A agreed, but the way one describes a conspiracy is A and B agreed with each other to do— and then you fill in the blank, and the blank must be some criminal thing. So— Allow me to rephrase. Write the sentence for us as A and B, where both A and B are co-conspirators, not the intercept, because the intercept is not, you told me already, not a co-conspirator. They are a conduit. Okay, but fill in the blank where A and B, both A and B, are co-conspirators, agreed to do X. The Tucker Payday lenders offered the possibility for First Premier Bank to be their ODFI. They made that offer. They communicated the offer through intercept. But it is First Premier Bank that accepted the offer. That's the meeting of the minds. They offered it, and they knew, Tucker knew about First Premier Bank being the bank, and made the offer to them, and used somebody else as a conduit? He did not know specifically who was going to be the ODFI, but he knew, he asked for an ODFI. He asked for an ODFI, and First Premier Bank, which has built into its own internal procedures, the requirement that it specifically approve each client that comes to them for ACH services, says, yeah, we accept. That's the agreement. And in my mind, it doesn't matter how the agreement is conveyed, or how it is communicated. Maybe cite another case, because I work by analogy. Can you point to any other conspiracy, RICO conspiracy in particular, but otherwise another conspiracy, where we've adopted this idea that someone can join a conspiracy exclusively through an intermediary who himself was not a member of the conspiracy? I can't cite a case, because that's not really how we approach the argument. But to me... I'm asking you. Conspiracy has got to be one of the most commonly used legal concepts in criminal law. It is. Can you point to any, you know, somebody hiring a hitman through somebody else, where the conduit was not himself a member of the conspiracy? I don't know. I mean, think of a million examples. But can you think of another example where, I suppose, yeah, you know, the brains of the conspiracy recruits another member of the conspiracy, but neither one knows who each other are, but somehow they've done it all through an intermediary? I'm struggling to conceptualize what you're trying to tell us. So I don't have anything that is on all fours with those facts. On all threes. On all threes, all twos. But I will say that there's an awful lot of jurisprudence with regard to sort of the general law of conspiracy, which, as we know, is a lesser standard than under the RICO conspiracy statute, where this court has held a tacit understanding will suffice to show agreement for purposes of a conspiracy conviction. That's United States versus a county. That there need not be any written statement or even a speaking of words which expressly communicates agreement, right? That's United States v. AMEO. That's not about how express it needs to be, no. Between whom it needs to be. We've always said it needs to be between two co-conspirators. That's what I'm struggling with. And you have interposed a non-conspirator. Some of you have already said Intercept is not alleged to be a co-conspirator. And I'm struggling to see how you make the connection to leap from one over to the other. What if Intercept is the co-conspirator? Maybe that'd go. If Intercept were a co-conspirator, I think we'd have arguably a completely different world, but we're not in that world because we're already conceded it's not. It's never been alleged to be. So I think we're stuck saying Intercept is not. We'd have a completely different case. What if we have to show that Intercept did all the mens rea and all this, too? But we're not there. So stick with the world we're living with. I agree, Your Honor. But we could go back and amend the pleading if we were allowed to do that. We'll hear from your adversary. Thank you. Good morning. May it please the Court. Brian Freeman on behalf of First Print Bank. The District Court's summary judgment decision should be affirmed, and the most straightforward pathway to do so is on the agreement element. The law on RICO conspiracy independently requires a conspiratorial agreement amongst co-conspirators. That's straight from U.S. v. Salinas addressing RICO conspiracy and saying a RICO conspiracy is a partnership in crime amongst conspirators. That's what a RICO conspiracy is. Mr. Kaplan is right that the agreement need not be expressed. It need not be formal. But the Second Circuit has said there must be a meeting of the minds. And what that means is there must be a meeting of the minds between First Premier Bank and the Tucker lenders or Tucker. But you can't show a meeting of the minds without evidence of a direct meeting. I mean, or evidence even that the co-conspirators ever met each other or even knew of each other's existence. Can't you? I think the law says that a defendant need not know of every conspirator. It need not have communicated with every conspirator. But as Judge Kogan held, we're dealing with a scenario where not just allegations, the facts developed in discovery are undisputed. My client never, no employee of First Premier Bank communicated with the Tucker lenders. They never received a penny from the Tucker lenders. There were no contracts. And the Tucker lender witnesses who were deposed in this case were asked, do you know who First Premier Bank is? And the answer is no. I had never heard of First Premier Bank until I showed up to have my deposition taken. Well, but couldn't it be the case that one member of the conspiracy could try to purposely insulate itself from knowing precisely who its co-conspirators are and operating through an agent who themselves perhaps is perfectly innocent, posit that they are totally innocent and conscript somebody else into doing something that is their criminal purpose. And if the person on the other side of the wall agrees yes, imagine a series of anonymous notes passed back and forth where no one knows who they're talking to. But they all say, yeah, this is a great idea. I want to rob the bank too. And they both, whoever these people are, unbeknownst to each other who each other are, they both think this is great. Let's rob the bank. Acting through, let's say, a passive and innocent intermediary. So the direct communication and all, or even knowing who the other person is, it doesn't seem like that's an obstacle to the meeting of the minds. And could one argue that that's your adversary's position here? That may be what counsel is now attempting to put forward. I don't think that works. I don't think, and for multiple reasons, I don't think that works in this case. Number one, I don't think you'd have a meeting of the minds between first premier and another co-conspirator. You have an unwitting intermediary. You would have an agreement with an unwit and the defendant, not the two parties that matter. Some conspirator. And so I don't, the other thing I would add that I think is important for the record, counsel has pointed in briefing to language in the contract between the Tucker lenders and intercepts that refer, and made arguments about apparent authority. So there's reference there. This section, I'd like to make sure the court has this in the record, because I think this is in the reply brief. At joint appendix 798, section 3.6 of that agreement says expressly, in no event shall either party be deemed an agent, employee, partner, or joint venturer or have the power or authority to bind the other in any way. So even if this agency theory is what's being advanced, there's no facts to support that theory. That's not been developed. And I think, step back and think about all the facts that the court has emphasized regarding the lack of any communications between a first premier employee and Tucker lenders. The lack of money, the lack of knowledge on the part of the conspirators themselves as to who first premier bank is. No reasonable jury can take those undisputed facts and conclude there's an agreement amongst conspirators in this case. The fact that intercept is acknowledged, not just in the amended complaint, but also in the reply brief. In this reply, in the reply brief to this court, it was acknowledged that intercept is not a co-conspirator. So if it's admitted that intercept, which is the party which first premier had its dealings, and intercept is the party that had all the communications with the Tucker lenders, had the contract, was communicating with them regularly. If they are not alleged to have the guilty knowledge of the RICO conspiracy, how can first premier one step removed be a RICO, have agreed to participate in a RICO conspiracy with actual knowledge of the illegality? In our view, that does not add up. And the law is clear that the agreement must be amongst conspirators. I will move on very briefly and address the knowledge issue, unless there are more questions from the court on agreement. The argument I heard from counsel related to sovereign immunity, I want to respond to that. And Judge Kogan responded to that. The argument is, as I understand it, even if sovereign immunity provided protection to the lenders, because they were true tribal lenders, even if that were true, these debts still would have been unlawful debt under state law. That's the way I understand the argument. And Judge Kogan responded to that in his reconsideration order. And his point was, there is no showing by Moss that first premier had actual knowledge that valid tribal entities subject to sovereign immunity making legitimate loans pursuant to their tribal sovereign authority would still violate state law under RICO. Counsel cites a Third Circuit unpublished case from 2019 that supports his position on that. In 2019, nine years after the actual knowledge that matters. And so in our view, there's no evidence here that would support a finding that first premier had actual knowledge. And that's the standard, actual knowledge or conscious avoidance as a substitute for actual knowledge. That first premier had actual knowledge that these loans were unlawful. In our view, Moss's case is the stuff of negligence. It's the stuff of, you could have done more legal analysis. You could have pulled these documents out of your files, even though I think it's undisputed the purpose of these ACH operations being conducted by first premier was not to engage in a legal analysis. That's not, certainly not what, that's not what these folks were doing. They were primarily concerned in the ACH system about whether transactions are authorized. You'll see that word authorized all throughout the record and the operations my clients were undertaking. That's because the primary concern of the ACH system is do we have businesses affecting withdrawals from folks' bank accounts without authorization, without their permission? So that's the primary focus of the bank when it's conducting these operations. Was this authorized? Yes or no? Because if it wasn't authorized, that's a problem. In this case, we had standard practices to monitor unauthorized transactions. It's the key, one of the key red flags in the ACH system. This is all in our papers and if the, and the threshold metric is over 1%. If unauthorized transactions are over 1%, the ACH rules and our policies and procedures said that's when you got to do follow-up. That undisputedly never happened. I don't, I think the record is those rates never got up over 0.6% for any of these lenders. In the end of the day, our view is Moss's claim is the stuff of negligence. There was no agreement amongst the co-conspirators. No reasonable jury could find that and the court's summary judgment should be affirmed. Thank you. Thank you. We'll hear your side on it. Thank you. Just very briefly. When we go back to the question of the agreement between the co-conspirators, I just want to fall back on Salinas and its instruction about how broadly RICO is supposed to be effectuated in order to effectuate its remedial purpose nowhere more broadly than in the context of a civil action. So I don't see any, I'm trying to think of a compelling reason why we would use the filter of every conspiracy that is an agreement that is between the co-conspirators would fall within the rubric of RICO and that would be permissible. But if one of the conspirators is wily enough to use some independent third party to do nothing more than can communicate to another conspirator that that would somehow shield them from liability under the statute. I don't think respectfully that we want to encourage that kind of gamesmanship in order to avoid RICO prosecution. And I think that's a legitimate concern here. There was a crime that the person went to jail. That crime could not have been effectuated without an ODFI. The ODFI was the way that they were able to very easily get into debtors' bank accounts in states where these loans were illegal. Without an ODFI, it didn't work. And because the ODFI was essential, that indicates the agreement here. They had to have an ODFI. They had to at least be going out to the marketplace and asking Intercept to find us an ODFI. And they found one. They found one in South Dakota. They found First Premier Bank. And while we're on the subject of an ODFI, I just want to make clear. It's in our briefing, but I want to make sure everybody understands. ODFIs give specific guarantees. That's how the ACH market works. One of those guarantees is that the transaction doesn't violate the laws of the United States. Well, these transactions violated the laws of the United States. These transactions were unlawful debt collection. They met the definition of the statute easily, easily. And because of that, there's a lot more going on here with regard to knowledge. First Premier was not just passively — they're not a credit card merchant, right? They're not just taking credit card transactions. They have an obligation. They have an approval process. That approval process included them looking at specimen loan documents with interest rates of hundreds of percent, loans made to states where those interest rates were criminally usurious, which is at the heart, as we all know, of the unlawful debt crime as a predicate act under RICO. I'm going to renew my request. If the Court is compelled to come to the conclusion that there has to be a direct agreement with the conspirators, the Third Amendment complaint that is before the Court in the appendix completely supports the proposition that Intercept is a conspirator. They knew everything that First Premier Bank knew. Thank you, Your Honors. Thank you, and thank you all. We will take the matter under advisement.